George G. HORTON, Plaintiff-Appellee,

v.

MOORE–McCORMACK LINES, INC., Defendant and Third-Party Plaintiff-Appellant,

v.

Juan RIVERA, Third-Party Defendant-Appellee.

No. 167, Docket 28305.

United States Court of Appeals Second Circuit.

Argued Nov. 12, 1963.

Decided Jan. 7, 1964.

Lumbard, Chief Judge, dissented.

Robert Klonsky, of DiConstanzo, Klonsky & Sergi, Brooklyn, N. Y. (for Klein and Hirschberger), for plaintiff-appellee.

Joseph M. Cunningham, of Kirlin, Campbell & Keating, New York City, for defendant and third-party plaintiff-appellant.

Emanuel Friedman, New York City, for third-party defendant-appellee.

Before LUMBARD, Chief Judge and KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Defendant, Moore-McCormack Lines, appeals from a judgment of the district court entered upon the verdict of a jury which awarded plaintiff Horton $80,000 as damages for personal injuries and awarded Moore-McCormack $4,300 against the third party defendant Rivera. Defendant contends that it is entitled to a new trial because of (1) insufficiency of the evidence to support a finding of unseaworthiness, (2) errors in the judge's charge and in the admission of certain evidence and (3) inconsistency of the verdict.

■ 1. *Unseaworthiness.* The evidence which is the basis for plaintiff's recovery shows that plaintiff sustained his injuries when he was attacked and severely beaten by Rivera who was a member of the crew of the ship on which plaintiff was boatswain. The issue of Moore-McCormack's liability was submitted to the jury on two grounds, unseaworthiness and negligence and can be upheld only if sustainable under both theories. Moore-McCormack does not question the sufficiency of the evidence on the issue of negligence. It contends, however, that there was insufficient evidence of unseaworthiness to take the case to the jury.

■ We believe that on the evidence the jury was justified in finding that Rivera was not "equal in disposition * * * to the ordinary men in the calling." Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955). That evidence shows that, before his attack on Horton, Rivera had made a vicious attack on another crew member, that his unprovoked attack on Horton was characterized by uncontrolled violence, that in attacking Horton he used a broken glass and a bottle and that in both of his attacks he bit his victims severely. Such evidence of "dangerous propensities and proclivities" is sufficient to support a jury finding of unseaworthiness. Boudoin v. Lykes Bros. S.S. Co., supra.

■ 2. *Judge's charge; admission of evidence.* Moore-McCormack's principal claim of error with respect to the judge's charge is that the judge instructed the jury that it could award Moore-McCormack any part of Horton's recovery against Moore-McCormack that it (the jury) thought proper. It was undoubtedly this clearly erroneous instruction which led the jury to bring in an incon-

sistent verdict. The point is therefore covered in our discussion below of the effect of the inconsistent verdict.

Moore-McCormack also complains of the judge's failure to give certain charges which it requested. We find that the substance of the requested charges was given insofar as the requests were proper.

■ Moore-McCormack further cites as error the admission in evidence of a document from a hospital in which plaintiff was a patient. The document appears to be a record made in the regular course of business and therefore admissible under the Business Records Act (28 U.S.C. § 1732). See Korte v. New York, N. H. & H. R. Co., 191 F.2d 86 (2d Cir.), cert. denied, 342 U.S. 868, 72 S.Ct. 108, 96 L. Ed. 652 (1951); United States v. New York Foreign Trade Zone Operators, Inc., 304 F.2d 792 (2d Cir.1962). But even if the document was not admissible we hold that, in the light of other medical evidence and of the limited use made of the document, the error was harmless.

3. *Inconsistent verdict.* The jury returned a verdict for Horton against Moore-McCormack for $80,000 and for Moore-McCormack against Rivera for $4,300.

■ The verdict is clearly inconsistent. The liability of Moore-McCormack to Horton is based wholly upon the injuries inflicted on Horton by Rivera. There is no evidence which would support any liability of Moore-McCormack which does not arise from Rivera's attack on Horton. The claim of unseaworthiness was grounded on Rivera's conduct. The owner's negligence was in hiring Rivera, in laxity of discipline which permitted this attack on Horton and in failing to halt that attack. The verdict against Rivera should have encompassed the entire amount of damages awarded Horton against Moore-McCormack.

■ As concerns Moore-McCormack's claim against Rivera the issue submitted to the jury was Rivera's liability for breach of his "implied agreement * * * to perform his duties in a proper

and seamanlike manner." Not only is it true that in this area of "contractual indemnity" there is no room for application of the theories of "active" or "passive," "primary" or "secondary" negligence (Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958)), but the fact that Rivera's conduct, which resulted in Moore-McCormack's liability to Horton, was wilful conduct, and not merely negligent conduct, makes this an even stronger case for recovery by Moore-McCormack of the entire amount of the damages awarded to Horton. (See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 132–135, 76 S.Ct. 232, 100 L.Ed. 133.) Moreover it is clear that Rivera cannot be heard to argue that Moore-McCormack is liable because by its negligence it permitted him to attack and injure Horton. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S. p. 134–135, 76 S.Ct. p. 238, 100 L.Ed. 133:

> "Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense."

There is no reason to believe that there was any error in the jury's verdict in the action of Horton against Moore-McCormack. The charge correctly set forth all the elements of the case on which the jury was required to pass in order to establish Moore-McCormack's liability to Horton. The error is in the verdict for Moore-McCormack against Rivera and is readily accounted for by the erroneous charge which instructed the jury that they could find for Moore-McCormack for a part only of the damages. The jury should have been instructed (as in fact they were at other points in the charge) that they must find for Moore-McCormack in the same amount which they

found for Horton against Moore-McCormack.

■■ Since there is no error in the jury's verdict for Horton there is no justification for remanding for a new trial of the main action. Dunbar v. Henry Du Bois' Sons Co., 275 F.2d 304 (2d Cir.1960). Moore-McCormack took no exception to Horton's verdict on grounds of inconsistency at the time it was rendered; this reinforces our view that it may not be set aside now. Rule 59(b), F.R.Civ.P. allowing ten days for the filing of a motion for a new trial, should not be so construed as to enable litigants to preserve a clear and easily correctible error, in order that they may gain a new trial or reversal on appeal. Yet, since an increase in the judgment over against Rivera seems clearly warranted in fact and in law and would not necessitate a new trial in the main action, we feel justified in considering this issue despite Moore-McCormack's failure to make an exception at the proper time.

■ It would be futile to remand for a new trial of the claim over of Moore-McCormack against Rivera, since Rivera is bound by the judgment in the main action. Caputo v. United States Lines Co., 311 F.2d 413 (2d Cir.), cert. denied, 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963); Knell v. Feltman, 85 U.S. App.D.C. 22, 174 F.2d 662, 665 (1949); 3 Moore, Federal Practice ¶1413 at 592–593 (2d ed. 1963). The district court would be required to direct the jury to find for Moore-McCormack in the amount of $80,000.

■ It is within our power as an appellate court to correct the verdict (Dextone Co. v. Building Trades Counsel, 60 F.2d 47 (2d Cir.1932); Farber v. Demino, 254 N.Y. 363, 173 N.E. 223 (1930); Zalewitz v. Greifinger, 14 A.D. 2d 750, 220 N.Y.S.2d 467 (1st Dept. 1961)), and it is our duty to do so. Caputo v. United States Lines Co., supra; see also Williams v. Pennsylvania R. Co., 313 F.2d 203 (2d Cir.1963).

We therefore affirm as to the main action and remand the third party action to the district court with the direction to enter judgment for Moore-McCormack against Rivera in the amount of $80,000.

No costs.

LUMBARD, Chief Judge (dissenting).

I dissent from the opinion of the majority and would affirm the judgment of the district court.

I have no quarrel with the majority's conclusion that if Horton was entitled to an $80,000 recovery against Moore-Mc-Cormack, the latter was concomitantly entitled to an equal recovery against Rivera. And the district judge should have so charged the jury and thereby avoided the inconsistency of a verdict of $80,000 against Moore-McCormack and a verdict of only $4,300 in favor of Moore-McCormack against Rivera.

However, I can see no reason to permit Moore-McCormack now to raise an objection which it failed to raise on either of the two occasions at the trial on which it had the opportunity to do so. After Judge Dawson had stated in his supplemental charge that judgment could be had against Rivera for "anything that Moore-McCormack Lines has to pay Horton, or any part of it that you think proper," counsel made no objection, apparently because he had not been listening very carefully and because Judge Dawson suggested that the supplemental charge was essentially the same as the original charge. Again, when the jury returned a verdict for $80,000 in favor of Horton against Moore-McCormack, and for $4,-300 in favor of Moore-McCormack against Rivera, counsel enjoyed full opportunity to request that the jury reconsider its verdict then and there under a proper charge, directing them to enter identical verdicts for Horton and Moore-McCormack.

The time of the courts and juries is far too precious to permit one party to forgo an opportunity to clarify a jury verdict which if undisturbed before the jury is dismissed may well necessitate a new trial. Here the trial consumed ten trial days. The whole tenor of the Rules of Civil Procedure militates in favor of

correcting errors in the conduct of a jury trial at a time when the delay and waste attendant upon awaiting appellate reversal may be avoided. Rule 51, for but one example, requires that objections to the court's instructions to the jury be stated before the jury retires to consider its verdict so that the court, when shown to be in error, may correct itself. Rule 59 (b), which requires that a motion for a new trial be served not later than ten days after entry of judgment, does not grant a party the right to delay in making such objections. Moore-McCormack's objections to the inconsistency of the verdicts should have been made before the jury was discharged. Having failed to make the objections then, Moore-Mc-Cormack should not be permitted to raise the question later as part of its attempt to get a new trial on all phases of the case.

If we could be reasonably sure that under proper instructions the jury would have returned identical verdicts in the amount of $80,000, I should hesitate to dissent from the majority's disposition of the case. However, it seems entirely possible that if the jury had been given an opportunity to reconsider its verdict under a mandate to return identical verdicts it would have reached a somewhat different figure. The fact that they returned only a $4,300 verdict against Rivera raises considerable doubt that the verdicts would each have been $80,000 if they had known that the verdicts must be identical. As counsel for neither Horton nor Rivera could reasonably have been expected to raise an objection to the inconsistency of the verdict, and as Moore-McCormack slept on its rights, I can see no justification for disturbing the verdict now.

Finally, I would hold inadmissible the medical report signed by Dr. Claudio Ferreira and sent from St. Joseph Hospital in Lourenco Marques, a seaport in the southern part of Mozambique, Africa. The record before us does not show that it was a hospital record made in the regular course of business and therefore admissible under the Business Records Act. The note suffers from all the inadequacies of hearsay testimony unmitigated by the reliability which such a foundation might provide. Nonetheless, while it was error to receive the exhibit, in light of the extensive medical testimony offered and the comparatively limited use made of the note, I believe that the admission of the note constituted no more than harmless error, both the fact and the nature of Horton's injuries at the time being essentially undisputed.

Accordingly, I would affirm the judgment of the district court which awarded Horton $80,000 against Moore-McCormack and Moore-McCormack $4,300 against Rivera.