In re **NISSAN MOTOR CORPORATION ANTITRUST LITIGATION.**

Lewis **LYMAN, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**NISSAN MOTOR COMPANY, LTD., et al., Defendants.**

**M.D.L. No. 120, Civ. A. No. 75–1955–Civ.**

United States District Court,
S. D. Florida.

April 25, 1977.

---

Granvil I. Specks, Chicago, Ill., for plaintiff.

Arkin & Hanlon, Denver, Colo., for defendants.

## ORDER DENYING MOTION TO DISMISS OF DEFENDANTS KINSEL AND SCOTTSDALE

ATKINS, District Judge.

This cause is before the Court upon motion of defendants, Kinsel Datsun, Inc. and Scottsdale Datsun, Inc., to dismiss this action as to them. Plaintiffs have filed memoranda in opposition to the requested dismissal.

### The Case

Nissan, Japan and Nissan, U.S.A. and various Datsun dealers (including Kinsel and Scottsdale) are charged in this civil anti-trust suit with engaging in a nation-wide combination and conspiracy, in violation of § 1 of the Sherman Act, to fix, maintain and stabilize the retail price of Datsun cars.

### Background Facts

By Order dated September 18, 1976, this Court certified a plaintiff class consisting of "all those purchasers of new Datsun motor vehicles who purchased said vehicles during the period from January 1, 1966, to an including July 18, 1971, from a franchised Nissan dealer in Arizona." Plaintiffs allege a conspiracy, however, for a period ending in 1973.

Defendants Kinsel and Scottsdale became franchised Nissan dealers in March, 1972. They filed this motion on the ground that there is no way to fix liability on them since they were not in existence during the class action period January 1, 1966, to July 18, 1971.

On December 30, 1976, this Court entered its Order on Motion for Dismissal requesting counsel to submit memoranda on the issue: Whether the limitation of a class action to a given time period necessarily limits the conspiracy alleged to that same period?

### Opinion

After a careful consideration of the briefs submitted by counsel, this Court is of the opinion that the defendants' motion to dismiss should be denied. Defendants Kinsel and Scottsdale may be subject to liability under principles of conspiracy law applicable to antitrust class actions, even though they were not franchised until after the date defining the plaintiff class period.

### A. The Relevant Conspiracy Principles

In non-class actions, late-comers to antitrust conspiracies, who, while knowing of the prior existence of the conspiracy, join it in order to promote the unlawful object for which it was organized, are liable for everything done during the period of the conspiracy's existence. *Dextone Co. v. Building Trades Council of Westchester County*, 60 F.2d 47 (2d Cir. 1932). This means that proof of the unlawful affiliation is sufficient to render a co-conspirator liable for all damages that the conspiracy caused, regardless of the exact time defendant became a member or the extent of its participation. *Dextone, supra,* at 48. "A person or corporation joining a conspiracy after it is formed and thereafter aiding in its execution, becomes from the time of joining as much a conspirator as if he originally designed and put it into operation." 1 Tuolmin's *Antitrust Laws*, § 22.14, at 404 (1949). "To establish a combination or conspiracy in restraint of trade, it is not necessary to prove that all of the participants formed or joined the combination simultaneously. A person may be found to have joined a combination or conspiracy which is already in existence. Such a person, by knowingly becoming a party to the combination or conspiracy, becomes liable and responsible in law for those acts of the members of the combination or conspiracy which were performed prior to the time that the new participant joined in it." *Antitrust Civil Jury Instructions*, A.B.A. Section of Antitrust Law, at 53 (1972), *citing Facific Lanes, Inc. v. Washington State Bowling Proprietors Assn.*, Civil No. 5381 (W.D.Wash.1965).

Several antitrust cases have held late-comers liable on these conspiracy principles. In *Dextone, supra,* the defendant was liable as a late-comer to a conspiracy to exclude the plaintiff from the New York cast stone market. The Second Circuit held it error to apportion defendant's liability according to the extent of its participation, since that resulted in a verdict against this particular defendant for less than the entire loss inflicted upon the plaintiff. The defendant's affiliation with the conspiracy rendered it liable, as would be any joint tortfeasor, for *all* the damages caused by the conspiracy.

In *United States v. Logan Co.,* 130 F.Supp. 550 (W.D.Pa.1954) the government sought to enjoin six defendants from violating § 1 of the Sherman Act through the unlawful use of certain patent license agreements. Defendant, United, asserted (as grounds in support of its motion for judgment on the pleadings) that it hadn't entered into any patent license agreement until after the formation of the alleged conspiracy. The court denied the motion stating: "A latecomer to an unlawful conspiracy is as liable to be enjoined from continuing to participate in it as are its originators." 130 F.Supp. at 553.

*Walder v. Paramount Publix Corp.,* 132 F.Supp. 912 (S.D.N.Y.1955), aff'd 272 F.2d 349 (2d Cir. 1959), was a private action for treble damages and injunctive relief in which the plaintiff alleged that a conspiracy from 1928 to 1951 prevented him from exhibiting "first-run" movies. Certain defendants urged that the complaint must be dismissed as to them since they were not formed until 1949 and couldn't be held liable for acts committed before they came into existence. The court said that this "contention overlooks the fact that these defendants are charged with having joined a conspiracy continuing from 1928 to the filing of the complaint. Under well established principles of conspiracy law, they may be held as fully liable as the original or earlier participants in the conspiracy." 132

F.Supp. 912, at 920. *Accord, Charles Rubinstein, Inc. v.Columbia Pictures Corp.,* 154 F.Supp. 216, 220 (D.Minn.1957).

Other Circuits have embraced a rule similar to the Second Circuit's *Dextone* rule. *Hays v. United Fireworks Mfg. Co.,* 420 F.2d 836 (9th Cir. 1969) was a civil antitrust action brought by plaintiff fireworks wholesalers against other fireworks wholesalers. There, defendant-United argued that the trial court erred in denying its motion for a directed verdict made at the close of all the evidence, on the ground that all of the acts complained of by the plaintiffs occurred prior to United's formation. The trial court was affirmed by the Ninth Circuit which shared its view that there was substantial evidence from which the jury could infer that United joined the conspiracy after it was organized. Said the Court of Appeals: "The legal premise for this conclusion, namely that one who joins a conspiracy after its formation is liable for all of the acts of the conspiracy, is not here questioned by defendants." 420 F.2d at 844. Nor was it questioned by the court itself which said in a subsequent case that one who enters a conspiracy late, with knowledge of what has gone before and with intent to pursue the same objective,[1] may be charged with preceding acts in furtherance of the conspiracy. *Industrial Bldg. Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336 (9th Cir. 1970).

In *United States v. American Radiator & Standard Sanitary Corp.,* 433 F.2d 174 (3d Cir. 1970), the Court held that a conviction of any defendant was warranted where the jury found beyond a reasonable doubt that the conspiracy alleged in the indictment existed and that the defendant knowingly became a member of the conspiracy, either at its inception or at a later phase of its operation.

Consequently, if plaintiffs can establish as a matter of fact (1) that they paid more for a Datsun (regardless of the particular seller involved) than would have been paid

---

1. This language points out the difficult burden of proof to be charged to a plaintiff; still, it is a possibility here that it will be sustained at trial.

absent the alleged conspiracy, and (2) that Kinsel and Scottsdale knowingly participated in the anticompetitive scheme which caused such overpayment,[2] nothing in the law will preclude recovery from these defendants.

In their present motion, defendants urge that since the plaintiffs have been limited to a class of purchasers buying between 1966 and 1971 (prior to defendants enfranchisement), the conspiracy period was correspondingly limited. Therefore, they assert, action taken subsequently cannot be relevant to plaintiff's case.

This argument is facially appealing insofar as the class, as defined, indeed cannot show that it "suffered damage proximately resulting from what the defendant (Kinsel and Scottsdale) did in violation of the act." *Kellogg Co. v. National Biscuit Company,* 38 F.Supp. 643, 647 (D.N.J.1941). These defendants, after all, were not franchised until later on. The issue then, is: Whether the limitation of a class action plaintiff group necessarily limits the conspiracy period proveable by that group.[3]

### B. The Effect of Fed.R.Civ.P. 23 (Class Actions)

■ von Kalinowski, writing on antitrust class actions generally, makes the following

point which is specifically applicable here: "Rule 23 should be recognized for what it is—a procedural device for the joint adjudication of claims. It is not intended to, nor could it, affect the substantive rights of the parties to the litigation. The Enabling Act[4] makes this quite clear." von Kalinowski, *Business Organizations—Antitrust Laws and Trade Regulation* § 108.01[1], at 108–3 (1974). Thus, the plaintiffs argue that, were this not a class action, precedent would clearly establish that Kinsel and Scottsdale could be liable as co-conspirators for the prior acts of other conspiracy members, such as Nissan and Nissan, U.S.A. Consequently, the fact that this is a class action cannot abridge their substantive right, protected by 28 U.S.C. § 2072, to recover from Kinsel, etc.

Moreover, the limitations placed on the plaintiff class period had the purpose of promoting the manageability of the suit as a class action so that the existence *vel non* of a conspiracy could be determined. The creation of a plaintiff class period did not purport nor does it serve to create a corresponding defendant class or conspiracy period as defendants would suggest. Such an automatic relationship would contradict the express language of Rule 23 which provides for direct certification of defendant classes.[5]

---

2. "To maintain his suit, a plaintiff must establish (a) a proximate, causal connection between defendant's action and injury translatable into money damages . . ." *State of Washington v. American Pipe & Construction Co.,* 280 F.Supp. 802, 806 (S.D.Cal.1968), *cert. denied,* 383 U.S. 842. "To be 'liable' under the antitrust laws . . . means that one has violated the antitrust laws and that violation has resulted in an injury to the business or property of the plaintiff . . ." *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1320 (5th Cir. 1976).

3. Plaintiffs do allege a conspiracy through February of 1973; Kinsel and Scottsdale were franchised in March of 1972.

4. 28 U.S.C. § 2072 (1948): "The Supreme Court shall have the power to prescribe, by general rules . . . the practice and procedure of the district courts . . . Such rules shall

not abridge, enlarge or modify any substantive right . . ."

5. Rule 23(a) provides for plaintiff *and defendant* classes:

". . . one or more members of a class may sue *or be sued* as representative parties on behalf of all only if . . . (3) the claims *or defenses* of the representative parties are typical of the claims *or defenses* of the class . . ." (emphasis added). "Although the overwhelming majority of cases involve plaintiff classes, the Rule also allows the creation of defendant classes. This would be appropriate in a situation in which a plaintiff charges a large group of persons with a conspiracy working to its damage." von Kalinowski, *supra,* § 108.01[2], at 108–5, *citing Research Corp. v. Pfister Associated Growers, Inc.,* 301 F.Supp. 497 (N.D.Ill. 1969), and *Contract Buyers League v. F & F Investment,* 48 F.R.D. 7 (N.D.Ill.1969).

### C.  *Conclusion*

The law is well settled that these defendants can be liable to the plaintiff solely on the basis of their alleged roles as co-conspirators.  Consequently, plaintiff has a substantive right to recover from all such joint tortfeasors and Rule 23 may not be interpreted so as to abridge that right.  The certification of the plaintiff class was done to facilitate disposition of the fundamental question: was there in fact, an unlawful conspiracy?  It did not serve to create a limited class of defendants which could not include Kinsel and Scottsdale.

Hence, at this point, Kinsel and Scottsdale must be kept in the case since their liability as co-conspirators is presently a live issue, regardless of their status as late-comers to the conspiracy.

Accordingly, it is ORDERED AND ADJUDGED that the motion to dismiss this cause as to defendants Kinsel and Scottsdale is hereby denied.